## 4557. JOHNSON *v.* THE STATE.

1. Where two persons engaged in a quarrel and separated, and, a short while thereafter, came together in a house where they were visiting, and one of them made an effort to get a gun from the hands of a by-stander, accompanying the effort with a threat to kill the person with whom he had previously quarreled, and the latter thereupon drew a weapon and fired at him, and by misadventure killed an innocent by-stander, and was tried for the homicide, under an indictment for murder, it was for the jury to say whether, under the circumstances, there was either a real or an apparent necessity to shoot, so as to make the homicide justifiable, or whether, although there was no such neces-sity, there was enough to justify the excitement of passion and reduce the homicide from murder to manslaughter.

2. The trial judge's recital of the State's contentions, in his charge to the jury, was justified by the evidence, and was not subject to the objection that it was argumentative and prejudicial.

3. Where one shot at another and killed an innocent bystander, and in a trial for murder defended the killing upon the ground that the person at whom he shot was attempting to get a gun with which to kill him, it was permissible for the person at whom the shot was fired to testify that he intended to kill the accused with the gun which he attempted to procure.

4. The requests to charge, so far as legal and pertinent, were covered by the charge given by the court to the jury. The evidence authorized the verdict.

DECIDED MARCH 18, 1913.

Conviction of manslaughter; from Houston superior court— Judge Mathews. October 18, 1912.

*M. H. Boyer,* for plaintiff in error.

*John P. Ross, solicitor-general,* contra.

POTTLE, J. The accused and Will Marshall had a quarrel, sep-arated, and, shortly after, met at the home of one Loyd, where they were visiting. Marshall was there when the accused arrived, and the latter was permitted to enter, upon his promise to go to bed and have no further difficulty. When the accused came in the house Loyd had a gun, which he says he procured to prevent either of the disputants from using it. The accused was armed and his attitude threatening. Marshall advanced toward Loyd to get the gun, saying that he would kill the accused. Thereupon the latter shot at Marshall and killed Loyd's thirteen-year-old son, an inno-cent bystander. The jury might have acquitted the accused on the theory that there was either an actual or an apparent necessity for him to shoot at Marshall to prevent the commission of a felony upon him; but the question of the real or apparent necessity

for the shooting was peculiarly for the jury. If they believed that there was no such necessity, but that Marshall's conduct and language were such as to justify the excitement of passion, and the shooting was solely the result of this passion, the verdict of voluntary manslaughter was authorized. *Pyle* v. *State,* 4 *Ga. App.* 811, 818 (62 S. E. 540), and citations.

It was error to reject the testimony of Marshall that he intended to kill the accused. If Marshall had done nothing to indicate an attempt to make a felonious assault upon the accused, what he may have purposed in his heart would not have been material, nor would the presence of a secret intent to kill, unknown to the accused, justify the latter in shooting. "Human intent can only be ascertained by acts and conduct." *Lawrence* v. *State,* 68 *Ga.* 289. But where it appeared that Marshall did attempt to obtain a gun and was apparently making an effort to assault the accused with the gun, it was of the utmost importance to the accused to show the felonious intent. The whole defense of the accused was based upon the contention that there was either a real or an apparent necessity for him to shoot Marshall, because Marshall either intended, or the accused had the right to believe he intended, to shoot him. If Marshall, and not the innocent bystander, had been shot, clearly testimony of Marshall that he actually intended to kill the accused would have been admissible. It was none the less so because an innocent bystander was shot instead of Marshall. The testimony would have shown that the fears of the accused were well founded, and were not the "bare" fears which the statute says constitute no defense for a killing. The refusal to admit this testimony demands a new trial. The requested instructions which the court refused to give to the jury were covered by the charge given, or were not legal and pertinen⊥                    *Judgment reversed.*